My name is Shannon Elkins, and I am an assistant federal defender, and I was trial counsel in this case. I represent Ms. Hari, a 51-year-old person who is serving a life sentence, and this is a unique case. Today I would like to take the time to discuss first the 924C issue and then the Commerce Clause issue, but I do not intend to get into or address the attorney-client issue due to time restraints. First, I submit that 247 is not a predicate crime of violence for 924C purposes. If there was any question at all about how the analysis is to be conducted, the Supreme Court issued an opinion in Taylor this summer telling us exactly what to do. In the 7-2 opinion, the Court simplified the very complex area of law, and the magistrate judges' report and recommendation, the district court's opinion, and the government's reasoning has all been undercut by the Taylor decision. It's also been undercut by the recent Fourth Circuit decision in Davis. Simply put, 924C statutory analysis does not require into the trial record at all. It is strictly about statutory construction. The Taylor court has made it crystal clear that 924C is not a predicate offense. First, you focus solely upon the elements of the predicate offense, you isolate them, and then you see whether or not the strict criteria of 924C applies. You know, none of that changed. I know some And it's 25 years we've been hearing this, so you don't have to go back to square one. I think the Taylor decision has made it crystal clear now, Your Honor, but I agree with the claim. I think it's very obtuse. Okay. And the issue that you want to argue, I find the tail end of the Taylor opinion difficult. So I'd like your spin on that. That last sort of column in the opinion, when we get to realistic probability or possibility, and defense lawyers, of course, want to say it's gone. It's gone except in immigration cases, which we don't do. It does not say that. So are you just making that broad argument, or are you relating it to this statute in this case? I'm relating it to this statute in this case, Your Honor. Well, this case, of course, the realistic probability is much more than the four corners of the statute. Your Honor, the instruction in Taylor submitted by Justice Gorsuch, and this is a quote, specifically noted, Congress in the Elements Clause did not mandate an empirical inquiry into how crimes are usually committed, let alone impose a burden on the defendant to present proof about the government's own prosecutorial habits. So pursuant to this statement, I would submit that the ---- That's one statement. But I believe that the Court is telling us not to look at the realistic probability test and not look at prosecutorial habits. So the question we're submitting is whether or not 247 is a Federal felony that always requires the government to prove the use, attempted use, or threatened use of force against the person or a property of another. Now, my view is, and tell me why I'm wrong, is 247A2, your argument, doesn't fit. Well, it depends on the interpretation of the word obstruct, Your Honor, and whether or not the Court finds obstruct to be as broad as other courts have in the past. The term obstruction and whether or not someone obstructed or attempted to obstruct an enjoyment of a person's free exercise of their religious beliefs could be a great number of things. It's a broad definition that covers any act that has the effect of ---- I don't understand why that matters. Because it could include someone burning their own property. It could include all kinds of conduct that doesn't fit within the force clause of 924C. But it only violates if it obstructs free exercise, another person's intangible property. That's correct, Your Honor. But it could include any act. It doesn't require physical force. Well, how implausible does the argument have to be before we get a serious Taylor issue? I think your argument is very implausible. And I believe, Your Honor, that ---- I can't imagine a prosecutor who would pursue with that, from that perspective. But I believe, Your Honor, that the Taylor case has struck down the use of the realistic probability. That's your global argument. But if it isn't, if the global argument is not ---- if you have to take that to the Supreme Court, then I think 247A2, I think A1 is a much stronger position. But it's still court of ---- I mean, it has to be ---- the property has to be owned by the minister. Or a private entity, Your Honor. Churches, synagogues, mosques, religious property could be owned by a number of people, not just the church itself. Well, let's assume for a moment that the realistic probability standard still applies. Can you come up with a plausible scenario where somebody would burn down their own property with the intent to obstruct religious use? Your Honor, in the Branch case, I believe the Branch Davidians, after a 51-day standoff with the ATF, set their own property and their own church on fire. And certainly, if they weren't ---- But what was the purpose? I mean, you have to have ---- it has to be more than just setting your own property on fire. It has to be the purpose. There's also the purpose clause. And I don't think you're going to get there with the Branch Davidians. Well, I agree, Your Honor. I think the Taylor case, however, says that intent fails to matter when trying to apply 924C to a case. Well, I know you're saying that. What I'm saying, though, if you're wrong and that the realistic probability standard still applies, is there a realistic probability of a person committing a 247A1 offense in burning down their own property and doing it for ---- to obstruct religious use? I submit that there is, because someone could own property, lease it to a religious organization, and it would still count under the statute. But why would they burn their own property down? Insurance proceeds or any of the number of things ---- The problem is, what you're talking about is the Arson Statute. And certainly, you can easily come up with a scenario where someone would burn down their own property for insurance proceeds. I mean, that happens. It's not uncommon. But this has the added factor of you have to do it for the real ---- to obstruct the religious use of the property. It's not to collect insurance. It's not for some other reason. And that's where I think it runs into a difficulty on coming up with a realistic scenario. And I would submit, Your Honor, that that doesn't apply to 247A1. But what the Court is suggesting is that it applies to 247A2. 247A1 just says any religious property. It doesn't necessarily require the intent that the Court is suggesting. So, Counsel, this is Judge Corbis on the line. If we disagree with you on 247A2, do we affirm, do we only need one predicate offense here? Yes, Your Honor. The Court would still be required to vacate count 4 under 924C because of the and-or language that was used in the jury instructions in closing where the Court instructed the jury to find that 924C could apply to count 1 and count 2, or it could apply to count 1 or count 2. And so striking down either count 1 or count 2 would necessitate vacation of count 4. So the answer is no, right? In other words, we wouldn't affirm. We'd have to reverse. That's correct, Your Honor. Okay. Thank you. The as I mentioned also, the obstruct and what it means to obstruct is a very broad term. In the case Deerling from the Eighth Circuit, the defendant obstructed justice when he set fire to his own house and barn. And again, it's this obstruct language that is unclear. In Maranello v. U.S., obstruct was held to mean anything that blocks, makes difficult or hinders a particular object, i.e., a particular person or thing. And so the term obstruction has broad meaning and covers any act that hinders a person in their free exercise of religion by force. Thus, the words any and obstruct make 247's application too broad, and therefore it does not fit the 924C definition of crime of violence. I'd like to move on now to my next argument. The next issue is the enactment of 247 itself. 247 is a criminal statute by its terms that has nothing to do with commerce nor any sort of economic enterprise. The court and the government both have conceded this, that 247 activities are non-economic activities and non-commercial in nature. Congressional findings in support of 247 simply found that the church bombings and fires were a serious national problem, that the states had tried to deal with them but were struggling. There was no evidence nor findings on the actual effects of damaging religious property or obstructing exercise of religion in the question upon interstate commerce. And there was no proffered link between 247 and interstate commerce. But 247B does contain a jurisdictional element, and the government must establish that damaging property or obstruction of religious enjoyment — I didn't understand from the brief. Are you talking all three elements of the Commerce Clause, or just are you saying one of them that we don't even have to think about? All three from the Commerce Clause, Your Honor. Okay. So any relationship? There's no economic activity involved in the gorgeous churches we all visit around the world? That's correct, Your Honor. I think that — What's correct? There is economic — there's all kinds of economic activity tied to the construction and maintenance and operation of churches. The Congress found no particular — there was no congressional finding about that in the written law. We don't need that. We don't need that. I mean, what case — when does the Supreme Court ever say there has to be a commerce finding? Well, it's one of the Lopez factors that the Supreme Court has said should be used to determine whether or not — Okay. It's relevant. Yes. Yes, Your Honor. It's one factor. I think the Jones case is instructive. The Supreme Court Jones case, which a unanimous Supreme Court held that the proper inquiry, we agree, is in the function of the building itself and then a determination of whether that function affects interstate commerce. The Jones case was looking at an owner-occupied residence not used for any commercial purpose, but did have another — the government argued it had another interstate commerce hook, that there was an out-of-state mortgage lender, an out-of-state insurer, and a natural gas company from outside of Indiana. But as the Supreme Court held there, practically every building in our cities, towns, and rural areas is constructed with supplies that have been moved in interstate commerce. And that there is — the fact that the building or property referenced in 247 is a place of worship, regardless if it is a church, mosque, synagogue, or some other religious building, the property is not used in an activity that affects commerce. This court in REA, R-E-A, found insufficient evidence to support that a church annex where Sunday school was held was used in interstate commerce or in any activity affecting interstate commerce, because passive connections to commerce were not enough. Similarly, the Supreme Court in the Lopez case found that possession of a gun in a school zone did not affect interstate commerce, and gender-motivated crimes of violence did not affect interstate commerce. And I would like to reserve my last minute and a half for rebuttal. Thank you. Mr. Buzicki. Good morning, and may it please the Court. My name is Brant Levine, and I represent the United States. This Court should reject all three of Hari's arguments and affirm her convictions. Notably, in this appeal, Hari does not contest that she and her fellow militia members drove across state lines to terrorize the Muslim community by bombing the Dar al-Farouk Islamic Center. Hari likewise does not contest on this appeal that the government proved each element of every offense beyond a reasonable doubt. Rather, Hari is asking you to vacate her convictions in a way that no court has ever done, a way that involves contorting the plain text and congressional intent behind the hate crimes laws that she violated. In fact, the courts that have addressed Hari's issues have all rejected them, and for good reason. The section, starting with Section 247, that falls squarely within Congress's Commerce Clause authority. And the charged offenses under Section 247 fall squarely within the definition of a crime of violence. I'd like to start briefly with the threshold issue of the Commerce Clause issue. As the Fourth, Tenth, and Eleventh Circuits have already held, Section 247's jurisdictional element ensures that the law can never exceed Congress's Commerce Clause authority. That's because the jurisdictional element requires the government to prove a sufficient connection between interstate commerce and the offense in every single case. And tellingly here, Hari has never disputed that the government proved such a connection in her case, nor could she because she used the channels and instrumentalities of commerce to carry out her crimes. She drove across state lines to buy explosive powder. She drove back across state lines to assemble a bomb. She then took that assembled bomb, driving across state lines again to bomb the mosque. If that is the quintessential conduct that the Congress, that Congress can regulate under the Commerce Clause, it's the en banc court recognized in Ballenger. And because Hari cannot meet her heavy burden to show that the law is unconstitutional in all aspects, she, her facial challenge must fail. Now, turning to the Section 924C issue, to start with, this Court needs only find that one of the two offenses qualify as a crime of violence to affirm here, but both offenses do qualify. As the district court correctly held, the elements of both offenses require harm to another person or their property. And Taylor does not change the outcome here. At most, Taylor merely confirms what this Court held over a year ago in Gonzales v. Wilkerson, and that is if a statute falls unambiguously outside the definition of a crime of violence, then the realistic probability test doesn't apply because the statute fails. It doesn't matter if the government would actually prosecute the conduct if a statute unambiguously falls outside the definition. But that's not what we have here because Section 247A1 and A2 overlap with Section 924C. The only question we have here is whether the elements can be stretched so far to include Hari's far-fetched hypotheticals, and they cannot. Taylor does not give defendants a green light to reinterpret statutes contrary to their plain text or congressional intent. I have trouble following the distinction you're making. I'm sorry, the distinction on? I don't follow the point. The point is that this is just a facial comparison, and therefore, Taylor, we can ignore what Taylor, the import of Taylor, in other contexts, which I'm not sure what those would be. This Court shouldn't ignore the import of Taylor. I think we can do what Taylor did in that case. And what the Supreme Court said in Taylor is that if there is any question about what the elements cover, court should apply the usual rules of statutory interpretation. And here, Hari's interpretation violates multiple canons of statutory interpretation. And let's start with a canon of statutory interpretation that the district court used, which is that when you have two alternative explanations and one would lead to absurd results and one would be consistent with congressional intent, court should choose the alternative consistent with congressional intent. And here, we don't have to guess what congressional intent is. When Congress passed the Church Arson Prevention Act of 1996, it did so unanimously, and it included specific findings in a bill that passed both houses of Congress. Those findings state that the purpose of the law is to address arson at religious places of worship and violent obstruction with individuals' free exercise rights. And if you dig a little deeper into the legislative history, you see that Congress learned that arsons against churches don't just damage buildings, they traumatize an entire community. This bill and the elements are all about harm to other people and their property. And that brings up a related canon of statutory construction that the Supreme Court applied in Taylor, which is that when evaluating a provision, you can't isolate them in isolation. You have to look at them in the context of the company they keep. You have to look for other textual clues in the statute. And here, we have a lot of textual clues in Section 247, starting with the definition of religious real property. This is not like the arson statute, which criminalizes destroying virtually any structure, and the arson statute even mentions personal property. Yes, sir. Okay. And unlike... No, go ahead. But unlike the arson statute, Section 247's definition of religious real property focuses on organizational properties like churches, mosques, or nonprofit organizations that lease space. Are you arguing that if a minister, with the terrorizing intent that the statute requires, burns a church he or she owns that could not be prosecuted under 247A1? That's... That if I was the trial judge, I would have to dismiss the indictment? Well, the first question there that the trial judge would need to decide is whose property is that? Well, I just told you. That's my hypothetical. That's in my hypothetical. Is that exclusively owned? That's in my hypothetical, whatever you want to argue about what owns means. Sure. I assume there's no... It's indisputable that with the terroristic intent prohibited by the statute, a person, typically a minister, burned his or her own church. Is that prosecutable? No. It's never prosecutable if you are damaging your own property. And this brings up a related canon of... Okay. You talk about look at the whole statute. Where did you just get that statement? I get that statement from a few things. One is the definition of... Textually. I'm sorry. What was that? Textually. Where do you get that statement? Well, we have to look at the motive for this. There are a lot of textual clues in Section 247. My hypothetical includes all the motive evidence that you want to throw up. In a case like that, that brings up a related canon of statutory interpretation where courts should not interpret a statute in a manner that would raise grave constitutional concerns. Okay. What's the constitutional concern? If somebody has exclusive rights to religious real property, say somebody does build a shrine in their backyard that nobody else uses, it's not the property of another, and they burn that down as an offering to their god, that would raise serious First Amendment concerns here. Okay. So that's supporting my hypothetical. I would dismiss the indictment. Because that's not prosecutable there, and that's a reason why this Court should not interpret A1 to allow criminalizing not just damage against one's own property, but I think the key thing in Section 924C, it talks of property of another.  You see, all of your arguments are reasons why I think if there's any content whatsoever of the realistic probability principle outside the immigration sphere that survives Taylor, then this is not, it applies here, because there are so many evidentiary requirements to convict that there's no plausible hypothetical left. But I don't see you arguing anything different than that. No, there is no plausible scenario here where somebody could be convicted. Well, that's what the realistic probability doctrine boiled down to, or perhaps oversimplified, that's what it gets at. Right, and that's consistent with what the Supreme Court in Taylor did with looking at the canons of statutory interpretation. And when you look at everything in Section 247, the definition of religious real property focused on entities who, if they lease the property. But if you're left with a totally unrealistic hypothetical that could not, then that's the categorical approach in its most unrealistic extreme. And that's what's being argued. Right. And sometimes the categorical approach can lead to uncommon results. But what the categorical approach doesn't allow is what you said, is that a defendant cannot reinterpret a statute in an implausible way. And that's what's happening here. Well, I think I'm having trouble following your argument, and maybe it's because you started with the constitutionality. Are we switching over to the argument that there's a realistic possibility that this statute could be committed in a way that's not a crime of violence? Is that the argument we're talking about now? We are talking about the 924C issue. Right. And I guess you keep talking about canons of statutory interpretation. I don't think there's anything that's difficult to interpret about the statute. I think the question only is, at least in my mind, is it realistically likely that a person would burn down their own property and you could say they jumped through all the hoops, they did it because of its religious character, or they did it to obstruct the free use of religious use. Is it realistic that somebody would do that? Isn't that the question? That is the question that the courts have historically asked, and the answer to that question here is no. But that is the issue, is if someone leases their property to an entity and then they don't like what that entity's religious views, let's say, is it realistic to expect they'd burn down their own property? I think the answer is probably no, but I think that's the question that has to be answered in this case. And in that hypothetical, it's not about Section 924C doesn't give you a get-out-of-jail-free card just because you harm your own property. It's about harm to another. And if you're leasing property, that lessee, that church, they have a legal interest in that property, so you're still harming the property of another here. It's not going to be who owns the property, but who has an interest in that property. Counsel, Judge Kovacs here, if you're a minister who owns property and you have parishioners who attend and you burn your own property, doesn't that also damage your parishioners who can no longer attend that facility? It does, Your Honor, and that's moving on to A2 of the statute. And A2 is always going to be directed at people. Damaging property alone, no matter who owns it, can never violate Section A2, at least in the context we have here where we have a charged offense under Section D3 that requires a dangerous weapon, fire, or explosives. There is no challenge here to the use of force. And when you are using force to obstruct someone else, as a matter of law, that's going to be a crime against another person. As the district court noted, you can't obstruct your own religious free exercise. So Section A2 is also an alternative for this Court to affirm here. And the jury instructions did specifically state for the crime of violence issue that they can convict on count four of the 924C charge if they found the defendant guilty of count one or count two or both. And that is built in here, so it doesn't matter whether this Court addresses one or the other, as long as the Court addresses one. Is counsel correct we'd have to vacate count four? No, that's not correct. Give me a second about why. Sure. Because Section 924C requires a crime of violence. We only need one predicate offense here. And the jury was given two predicate offenses, and they convicted on both, the underlying counts. So this might be a more difficult case if the jury didn't convict on both. But the jury did convict on count one on A1. The jury convicted on A2. So because the jury has convicted on those counts, it doesn't matter on Section 924C if you only find that one of them is a crime of violence. And if there are no other questions on the crime of violence issue, I'm not also planning on addressing the Sixth Amendment issue unless the Court has any questions on those. If there are no further questions, we would ask that the Court affirm the judgment. Thank you. Thank you, counsel. Thank you, Your Honor. Your Honor, I first want to point out in 247A1 that the term any has been looked at a number of times in regards to the arson statutes, by this Court in the Mink case, by Torres-Lynch by the Supreme Court, and in the Cohen case in the Seventh Circuit, where the term any has been held to be a word with expansive meaning. The Fourth Circuit just looked at this in Davis and issued an opinion on November 10th of 2022. Looking at a prior arson statute, 844F, the Court held that any building or other property which was then owned, possessed or used by or leased to the United States does not qualify as a predicate because any property does not require the government to prove beyond a reasonable doubt that it was the property of another. And this could include the destruction of the defendant's own property. So we do have that any term that is operative. The same issue occurs with obstruct. The jury in this case convicted Ms. Harry on both counts one and two for the same essential conduct, the destruction of property which obstructed the religious enjoyment of people who attended the mosque. So obstruct, because it is a broad definition, can cover a number of things. It doesn't have to be against a person directly. Obstruction can be simply burning a building or, in this case, destruction of a mosque. So we're asking the Court to look specifically at those two terms. And I would like to point out that the jury – Go ahead. Thank you, Your Honor. One point. The jury instructions at ECF Document 327 require and or. And the jury, we do not know if they found that Ms. Harry had committed a crime of violence because she committed count one or because she committed count two. And so that language specifically requires the vacation of count four of the indictment. Thank you. That was addressing count four, that last point? It was, Your Honor. Okay. Thank you.